1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*Telephone: (602) 274-1100*
*Ty D. Frankel (027179)*
*tfrankel@bffb.com*

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*600 W. Broadway, Suite 900*
*San Diego, California 92101*
*Telephone:  (619) 756-7748*
*Patricia N. Syverson (020191)*
*psyverson@bffb.com*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Chad Shoults, on behalf of himself and all those similarly situated,<br><br>        Plaintiff,<br>v.<br><br>G4S Secure Solutions (USA) Inc.,<br><br>        Defendant. | Case No.<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**[Jury Trial Demanded]** |

Plaintiff Chad Shoults ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant G4S Secure Solutions (USA) Inc. ("G4S" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and Arizona wage laws, A.R.S. § 23-350, *et seq.* ("Arizona Wage Statute").

### NATURE OF THE ACTION

1.      Plaintiff alleges on behalf of himself and all other similarly situated non-exempt, hourly security officers of Defendant who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to

unpaid wages including unpaid overtime for all hours worked exceeding forty (40) in a workweek, liquidated damages, and attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

2.     Plaintiff further complains, pursuant to Fed. R. Civ. P. 23, on behalf of himself and a class of other similarly situated non-exempt, hourly security officers employed by Defendant within the state of Arizona (the "Arizona Class Members"), that they are entitled to timely payment of all wages due, plus interest, treble damages, and penalties as allowed by the Arizona Wage Statute, A.R.S. 23-350, *et seq.*

3.     Plaintiff further alleges, on his own behalf, pursuant to FLSA, 29 U.S.C. § 215(a)(3) and 216(b), that he is entitled to reinstatement, lost wages, and damages, including liquidated damages, fees, and costs for Defendant's unlawful retaliation against him resulting from his complaints about unpaid overtime.

## JURISDICTION AND VENUE

4.     The FLSA authorizes civil actions by private parties to recover damages for violations of the FLSA's wage and hour provisions.  This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim. The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claim, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because substantial decisions and events giving rise to the claims occurred in the State of Arizona within this District.

7.     The United States District Court for the District of Arizona has personal jurisdiction because Defendant conducts business within this District and the actions giving rise to this Complaint occurred in this District.

8.     At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

9.     Plaintiff and the other similarly situated Security Officers are employees as defined in 29 U.S.C. § 203(e)(1) and are non-exempt employees under 29 U.S.C. § 213(a)(1) and A.R.S. § 23-350(2).

10.     At all relevant times, Defendant was an employer as defined by 29 U.S.C. § 203(d) and A.R.S. § 23-350(3).

11.     At all relevant times, Defendant employed workers to perform on-site security services for its clients in Arizona, including Plaintiff Chad Shoults and those persons similarly situated to Plaintiff who are members of the putative collective action and class action classes (collectively referred to as "Security Officers").

12.     At all relevant times, Plaintiff and the other members of the putative classes were engaged in commerce and/or worked for Defendant in an enterprise engaged in commerce.

13.     At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

**PARTIES**

14.     Defendant G4S Secure Solutions (USA) Inc. is a Florida corporation with its headquarters and principle place of business located at 1395 University Boulevard, Jupiter, Florida 33458.

15.     On its website, G4S indicates that it is the leading global security solutions company with a very large operation in the United States. G4S operates throughout the United States, including in Arizona, providing physical security services to commercial businesses, government entities, gated communities, industrial complexes, and many other clients. According to its website, G4S has more than 57,000 employees and more than 9,000 customers. *See* G4S website: https://www.g4s.com/en-us (last visited April 15, 2019).

16.     G4S employs Security Officers throughout the United States, including in Arizona, to provide on-site security services to its clients.  G4S Security Officers secure "premises, such as building sites, shops, warehouses, banks and factories as well as ports and airports."  They conduct foot or vehicle patrols, controlling access at points of entry, securing equipment and people, responding to emergency situations and helping to identify and prevent criminal activity. *See* G4S website: https://careers.g4s.com/en/security-officer (last visited April 15, 2019).

17.     Plaintiff Chad Shoults was, at all relevant times, an individual residing in Phoenix, Arizona.

18.     At all relevant times, Plaintiff Shoults was employed by G4S in the Phoenix, Arizona metropolitan area, as a Security Officer, an hourly, non-exempt position.  Plaintiff Shoults' Consent to Become a Party Plaintiff and Opt-In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached hereto as **Exhibit 1**.

## COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff Shoults brings Count I, the FLSA off-the-clock unpaid overtime claim, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following similarly situated employees of Defendant:

> All hourly, non-exempt Security Officers, regardless of actual title, who worked for Defendant during the last three years at any client site in Arizona ("Off-the-Clock Collective Action Members").

20.     Plaintiff, on behalf of himself and all other similarly situated hourly, non-exempt Security Officers, seeks relief on a collective basis challenging Defendant's practice of failing to accurately record work time and pay its employees for all hours worked, including overtime.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs to the collective action may be determined from Defendant's records and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

21.     Plaintiff is similarly situated to the Off-the-Clock Collective Action Members because they are all are subject to similar payroll policies and procedures.  Defendant requires the similarly situated Off-the-Clock Collective Action Members to work overtime but fails to pay them for all hours worked, including overtime resulting from pre-shift and post-shift work.  The Off-the-Clock Collective Action Members are also similarly situated because they all utilize Defendant's time recording and reporting practices, which fail to accurately account and pay for all time worked including overtime.

22.     Defendant's overtime wage practices were routine and consistent. Throughout the relevant time period over the past three years, the Off-the-Clock Collective Action Members regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

23.     Plaintiff and the Off-the-Clock Collective Action Members performed the same or similar job duties. Moreover, they regularly worked more than forty hours in a workweek. Accordingly, the employees victimized by Defendant's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

24.     Defendant's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action. Thus, Plaintiff's experience is typical of the experience of the others employed by Defendant.

25.     The Off-the-Clock Collective Action Members, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40). Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

26.     Plaintiff will fairly and adequately protect the interests of the Off-the-Clock Collective Action Members and has retained counsel that is experienced and competent in the practice of wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with the putative members of this collective action.

1

## **CLASS ACTION ALLEGATIONS**

2      27.    Plaintiff brings Count II, the Arizona Wage Statute claim, as a Rule 23 class

3   action on behalf of himself and the following persons:

4          All hourly, non-exempt Security Officers, regardless of actual title, who worked for

5          Defendant during the last three years at client sites in Arizona ("Arizona Class

6          Members").

7      28.    Plaintiff's Rule 23 class claim (Count II) satisfies the numerosity,

8   commonality, typicality, adequacy, and superiority requirements of a class action pursuant

9   to Fed. R. Civ. P. 23.

10     29.    Plaintiff's Rule 23 state law class claim (Count II) satisfies the numerosity

11  requirement of a class action.   The Arizona Class Members identified above are so

12  numerous that joinder of all members is impracticable.   Although the precise number of

13  potential class members is unknown, and the facts for calculating that number are presently

14  within the sole control of Defendant, upon information and belief, there are hundreds of

15  Arizona Class Members.

16     30.    Questions of law and fact common to the Arizona Class Members

17  predominate over questions that may affect only individual members because Defendant

18  has acted on grounds generally applicable to all Arizona Class Members.   Among the

19  questions of law and fact common to Plaintiff and the Arizona Class Members are:

20          a.    whether Defendant employed the Arizona Class Members within the

21                meaning of the Arizona Wage Statute;

22          b.    whether Defendant owes the Arizona Class Members wages in

23                exchange for all work performed, including pre-shift and post-shift

24                work;

25          c.    whether Defendant unlawfully failed to timely pay Arizona Class

26                Members wages for all hours worked, including pre-shift and post-shift

27                work;

28

1         d.     whether Defendant is liable for damages under the Arizona Wage

2             Statute, including but not limited to compensatory damages, interest,

3             and treble damages.

4      31.   Plaintiff's claims under Arizona state law are typical of those of the Arizona

5  Class Members' in that class members have been employed in the same or similar positions

6  as Plaintiff and were subject to the same or similar unlawful payroll practices as Plaintiff.

7      32.   The common questions set forth above predominate over any questions

8  affecting only individual persons, and a class action is superior with respect to

9  considerations of consistency, economy, efficiency, fairness, and equity to other available

10 methods for the fair and efficient adjudication of the state law claims.

11     33.   A class action is appropriate for the fair and efficient adjudication of this

12 controversy.  Defendant acted or refused to act on grounds generally applicable to the entire

13 class.  The presentation of separate actions by individual class members could create a risk

14 of inconsistent and varying adjudications, establish incompatible standards of conduct for

15 Defendant, and/or substantially impair or impede the ability of the class members to protect

16 their interests.  The damages suffered by individual class members may be relatively small,

17 and the expense and burden of individual litigation make it virtually impossible for the

18 members of the class action to individually seek redress for the wrongs done to them.

19     34.   Plaintiff will fairly and adequately represent the interests of the Arizona Class

20 Members and has retained counsel that is experienced and competent in the fields of wage

21 and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in

22 conflict with those members of this class and collective action.

23                 **STATEMENT OF FACTS**

24     35.   Defendant G4S is an "employer" within the meaning of the FLSA and the

25 Arizona Wage Statute.

26     36.   Plaintiff was hired by G4S as a Security Officer in 2015.  He worked for

27 Defendant at its client sites called Marina Heights in Tempe, Arizona and Cyrus One in

28 Chandler, Arizona.

37.     Plaintiff worked continuously for G4S from 2015 until Defendant failed to assign him to additional positions beginning in or around the latter half of February 2019.

38.     Plaintiff was employed as a non-exempt, hourly Security Officer at a rate of approximately $13.00 per hour, which eventually increased to $14.74 per hour.

39.     While Plaintiff's job duties required him to arrive early at his work site prior to his shift to pick up equipment and clock in on Defendant's company-wide timekeeping system, he was only paid for his scheduled shift hours and received no compensation for his pre-shift work.

40.     While Plaintiff's job duties required him to remain at his post longer than his scheduled shift until he was either relieved by the Security Officer scheduled to work the following shift after his, he was only paid for his scheduled shift and received no compensation for his post-shift work.

41.     Defendant required Plaintiff and other similarly situated Security Officers to perform certain pre-shift and/or post-shift duties without compensation, such as picking up equipment (pre-shift) and returning equipment, assisting with staff turnover, and attending mandatory meetings (post-shift).

42.     For Plaintiff and other similarly situated Security Officers, these pre-shift and/or post-shift job duties were integral and indispensable to their jobs as Security Officers and required by Defendant.

43.     While Plaintiff's job duties, including his pre-shift and post-shift duties, sometimes required him to work in excess of forty (40) hours per workweek, he was routinely denied overtime premiums and not paid for the entirety of the overtime hours he worked per week.

44.     As hourly, non-exempt employees, Plaintiff and the other similarly situated Security Officers are or were entitled to overtime premiums for hours worked in excess of forty (40) each workweek.

45.     As hourly, non-exempt employees, Plaintiff and other similarly situated Security Officers were promised an hourly rate by Defendant for all hours worked in each

workweek, and those wages were timely due to Plaintiff and other similarly situated Security Officers pursuant to the Arizona Wage Statute.

46. Plaintiff and other similarly situated Security Officers were required to work off the clock. This work occurred before the beginning of their shifts and following the end of their shifts.

47. However, when Defendant processed payroll for Plaintiff and its other similarly situated Security Officers, it only paid Plaintiff and the other similarly situated Security Officers based on the hours for their regularly scheduled shifts and failed to pay Plaintiff and the other similarly situated Security Officers for their pre-shift and post-shift duties.

48. For example, Plaintiff and the similarly situated Security Officers were required to stay late to account for the time it took the new shift members to be ready for work. Regardless of the time they worked after the conclusion of their scheduled shift, the similarly situated Security Officers were only paid for the hours they were scheduled to work. Defendant did not account for the off the clock work Plaintiff and the similarly situated Security Officers were required to perform at the conclusion of their shifts waiting for the employees scheduled for the following shift to complete their pre-work preparations and begin working.

49. Plaintiff and the similarly situated Security Officers would also be required to stay late for meetings required by management, in addition to the time they spent working late to ensure there was no gap in services while waiting for the Security Officer who would take over their shifts to arrive and be ready to start work.

50. The unpaid work time that Defendant required Plaintiff and other similarly situated Security Officers to work off the clock routinely caused Plaintiff and other similarly situated employees to work in excess of forty (40) hours in a workweek without overtime pay during their employment, including the relevant time period over the past three years.

51.     For example, Plaintiff's scheduled shift as a Security Officer during his employment, including the relevant time period over the past three years, was typically Sunday through Thursday from 9pm until 5am for a total of forty scheduled hours per week.

52.     However, Plaintiff was routinely required to work hours off the clock in addition to the hours he worked during his scheduled shift, resulting in him having to work as many as 45 hours during the typical week over the course of his employment including the relevant period of the last three years.

53.     Defendant routinely failed to pay Plaintiff and the similarly situated Security Officers time and a half their regular rate of pay for the overtime they were required to work off the clock outside of their scheduled shifts.

54.     Defendant's policy and practice requiring Plaintiff and other similarly situated Security Officers to work off the clock, including pre- and post-shift, denied them both straight time and overtime pay.

55.     A significant part, if not all, of this unpaid straight time and overtime work is evidenced in Defendant's own payroll, time-recording, and attendance records, most of which are exclusively in Defendant's own possession.

56.     Defendant's policy and practice is to willfully deny its hourly, non-exempt employees pay for all hours worked, including regular hours and hours worked beyond forty (40) in a workweek.

57.     Even when pre- and post-shift work was performed and reported, those hours were not reflected on employees' paystubs and were unpaid.  This practice resulted in Defendant failing to pay Plaintiff and the similarly situated Security Officers for hours reflected on their time sheets, in addition to hours they were required to work off the clock.

58.     On information and belief, Defendant applied and instituted the above-described willful and illegal policies and practices regarding not paying for all hours worked, including pre-shift and post-shift, at all of Defendant's client sites in Arizona.

59.     As a result of its policies, Defendant fails to pay both straight time wages and overtime to save payroll costs and taxes. Defendant enjoys ill-gained profits at the expense of Plaintiff and other similarly situated Security Officers.

60.     Plaintiff began investigating and complaining about Defendant's unlawful failure to pay for all hours worked, including overtime, in August 2016.   During his employment, Plaintiff spoke with other Security Officers at locations throughout Arizona about Defendant's unlawful pay policies.

61.     Plaintiff complained about Defendant's pay practices, including unpaid overtime, to Defendant's management.

62.     On August 31, 2016, Plaintiff sent an email to management raising his concerns about being required to work off the clock that resulted in unpaid overtime.

63.     Almost immediately thereafter, Plaintiff began getting severely harassed by management as a result of having raised concerns about unpaid overtime.

64.     On or about September 1, 2016, Defendant, by and through its management, confronted Plaintiff and threatened him by saying he should accept his job "like a man" and that failing to do so made him a "faggot."   Plaintiff manager told Plaintiff that he would "beat the shit out of him if he didn't like the rules."   Plaintiff was upset and fearful for his job.

65.     After Plaintiff lodged his complaint with management regarding off the clock work, Plaintiff's manager would set an alarm on his phone when it was time for Plaintiff's shift to end for the day.   Rather than allow the Security Officers to leave, management required the crew to stay for meetings.  Plaintiff's manager said that he "had to set an alarm because some faggot wanted to go home." As a result of Plaintiff's complaints about overtime, Plaintiff's manager called him a "cracker" and said other derogatory statements to Plaintiff.

66.     With the threats increasing as a result of Plaintiff's complaints about off the clock work and overtime, Plaintiff again contacted corporate management on April 11, 2017.  He emailed a general manager asking for a meeting about the retaliation he was

experiencing as a result of his complaints about off the clock work he was still being required to perform resulting in unpaid overtime.  The retaliation continued and G4S did not properly investigate it or ensure that it would stop.

67.     On or about February 14, 2019, Plaintiff again complained in writing to G4S management about the continuing harassment he was experiencing as a result of the complaints about off the clock work and unpaid overtime he was still having to work and raised complaining to the Department of Labor.

68.     In retaliation for and as a direct and proximate result of Plaintiff's complaints about overtime, Defendant removed Plaintiff from the work schedule and precluded him from working beginning in or around the latter half of February 2019.

69.     Despite Plaintiff's complaints about Defendant's wage violations, Defendant did not investigate the allegations and did not modify its unlawful pay practices, which Defendant willfully continues.

70.     Defendant's adverse employment action against Plaintiff was unlawful retaliation for Plaintiff's complaints about Defendant's unlawful overtime pay practices.

71.     Defendant's adverse employment actions were malicious and punitive in nature and caused Plaintiff Shoults both economic and non-economic damages, including lost wages, emotional distress, embarrassment, and other damages.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA - 29 U.S.C. § 207 et seq.; Brought Against Defendant by Plaintiff Shoults Individually and on Behalf of the Off-the-Clock Collective Action Members)**

72.     Plaintiff, on behalf of himself individually and all Off-the-Clock Collective Action Members, reasserts the allegations set forth in the above paragraphs.

73.     Defendant paid Plaintiff and the Off-the-Clock Collective Action Members on an hourly basis, and they are and were all entitled to the overtime protections of the Fair Labor Standards Act as set forth in 29 U.S.C. §§ 201, *et seq.*

74.     At all relevant times, Defendant has been, and continues to be, subject to the minimum wage and overtime provisions of the FLSA because its employees are engaged in commerce and Defendant has annual revenues in excess of $500,000.

75.     Plaintiff and the Off-the-Clock Collective Action Members are non-exempt employees entitled to the statutorily mandated overtime pay according to the FLSA.

76.     Defendant was an employer pursuant to 29 U.S.C. § 203(d).

77.     Defendant failed to comply with 29 U.S.C. § 207 because Plaintiff and the Off-the-Clock Collective Action Members worked for Defendant in excess of forty hours per week, but Defendant failed to pay them for those excess hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA.

78.     Plaintiff and other similarly situated Security Officers performed pre-shift and/or post-shift work causing them to work in excess of forty (40) hours in certain workweeks.

79.     This work was performed at Defendant's direction and/or with Defendant's knowledge.

80.     Defendant willfully violated the FLSA by failing to pay Plaintiff and the other Off-the-Clock Collective Action Members all wages due including overtime premiums for all hours accrued beyond forty (40) in a workweek.

81.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.

82.     At all relevant times, Defendant willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiff and the other similarly situated Security Officers, including records determining the wages and hours of employment pertaining to Plaintiff and the similarly situated Security Officers.

83.     As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, Defendant has unlawfully withheld overtime wages from Plaintiff and the Off-the-Clock Collective Action Members.  Accordingly, Defendant is liable to Plaintiff and the

1   Off-the-Clock Collective Action Members for unpaid wages including overtime

2   compensation, an additional equal amount as liquidated damages, pre-judgment and post-

3   judgment interest, reasonable attorneys' fees, and costs of this action.

4        WHEREFORE, Plaintiff and all similarly situated employees demand judgment

5   against Defendant, and pray this Court:

6        a.     Certify the claim set forth in Count I above as a collective action

7   pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly,

8   non-exempt Security Officers, regardless of actual title, who worked for Defendant during

9   the last three years at a client site in Arizona, informing them of their right to file consents

10  to join the FLSA portion of this action;

11       b.     Designate Plaintiff Shoults as the Representative Plaintiff of the Off-

12  the-Clock Collective Action and undersigned counsel as the attorneys representing the Off-

13  the- Clock Collective Action Members;

14       c.     Award Plaintiff and all similarly situated employees compensatory and

15  liquidated damages under 29 U.S.C. § 216(b);

16       d.     Award Plaintiff and all similarly situated employees prejudgment and

17  post-judgment interest as provided by law;

18       e.     Award Plaintiff and all similarly situated employees attorneys' fees

19  and costs as allowed by Section 216(b) of the FLSA, including that Defendant is financially

20  responsible for notifying the Collective Action Members of Defendant's alleged wage and

21  hour violations; and

22       f.     Award Plaintiff and all similarly situated employees such other relief

23  as this Court deems fair and equitable, including injunctive relief.

24  **COUNT II**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE**
25  **ARIZONA WAGE STATUTE**
**(Failure to Timely Pay Wages Due; Brought Against Defendant by Plaintiff Shoults**
26  **Individually and on Behalf of the Arizona Class Members)**

27

28

84.     Plaintiff, on behalf of himself and the Arizona Class Members, reasserts the allegations set forth in the above paragraphs.

85.     At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendant within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Wage Statute.

86.     Defendant was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

87.     Defendant is aware that, under A.R.S. §§ 23-351-353, it was obligated to timely pay all wages due to Plaintiff and the Arizona Class Members.

88.     Defendant failed to timely pay Plaintiff and the Arizona Class Members wages he was due without a good faith basis for withholding wages.

89.     Defendant has willfully failed and refused to timely pay wages due to Plaintiff and the Arizona Class Members.  As a result of Defendant's unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

90.     The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendant and pray this Court:

a.     Certify the state law claim set forth in Count II above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.     Designate Plaintiff Shoults as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

c.     Award Plaintiff and all similarly situated employees compensatory damages and treble damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-350 et seq.;

> d.    Award Plaintiff and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

> e.    Award Plaintiff and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT III**
**FLSA RETALIATION IN VIOLATION OF 29 U.S.C. § 15(a)(3)**
**(Brought Against Defendant by Plaintiff Shoults Individually)**

91.    Plaintiff, on behalf of himself, reasserts the allegations set forth in the above paragraphs.

92.    The Fair Labor Standards Act prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the act or causes to be instituted any proceeding under or related to the act.

93.    Plaintiff engaged in protected activity when he complained to Defendant about its unlawful failure to pay for all hours worked, including overtime owed pursuant to the Fair Labor Standards Act, discussed Defendant's unlawful failure to pay for all hours worked, including overtime owed pursuant to the Fair Labor Standards Act, with Defendant's employees and when he notified Defendant of its wage violations.

94.    As a direct and proximate result of Plaintiff's complaints about Defendant's unlawful overtime and wage practices, Plaintiff was harassed by management without proper investigation by Defendant and eventually had the adverse employment action of being removed from work by Defendant.

95.    Defendant acted in retaliation when it removed Plaintiff from his job and when it failed to investigate the harassment Plaintiff experienced.

96.    There is a causal connection between Plaintiff engaging in the protected activity and Defendant's harassment and adverse employment action of removing Plaintiff from work in that but for the Plaintiff engaging in the protected activity, Defendant would not have ended Plaintiff's employment or failed to properly investigate the harassment he experienced.

97. Plaintiff's protected activity was a motivating factor in the decision by Defendant to remove Plaintiff from work.

98. Plaintiff's protected activity was a motivating factor in the harassment he experienced by Defendant and that Defendant failed to stop.

99. Defendant's actions were punitive, malicious, and in direct retaliation for his complaints of FLSA violations.

100. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

101. Defendant's conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff and with a complete indifference of Plaintiff's rights.

102. Defendants' conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive or in reckless disregard of his rights. Defendant therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award under federal law.

WHEREFORE, Plaintiff demands judgment against Defendant and prays this Court:

a. Order Defendant to reinstate Plaintiff's employment to a reasonably comparable employment position with comparable pay from which Defendant removed him;

b. Award Plaintiff lost wages and non-economic damages flowing from Defendant's unlawful retaliation, plus an equal amount in liquidated damages and attorneys' fees and costs;

c. Award Plaintiff prejudgment and post-judgment interest as provided by law; and

d. Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands a jury trial on all claims with respect to which he may

3  have the right to a jury.

4      DATED:  April 15, 2019.

5                                    BONNETT, FAIRBOURN, FRIEDMAN
                                    & BALINT, P.C.
6
                                        /s/ Ty D. Frankel
7                                    Ty D. Frankel
                                    2325 E. Camelback Road, Suite 300
8                                    Phoenix, Arizona 85016
                                    Telephone: (602) 274-1100
9                                    Facsimile: (602) 798-5860

10                                   BONNETT, FAIRBOURN, FRIEDMAN
                                    & BALINT, P.C.
11                                   Patricia N. Syverson
                                    600 W. Broadway, Suite 900
12                                   San Diego, California 92101

13                                   Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28