**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

*Counsel for Plaintiff*

**MARTENSON HASBROUCK & SIMON LLP**
2537 Apple Valley Rd. NE
Atlanta, Georgia 30319
Telephone: (470) 733-6312
Kelly Eisenlohr-Moul (pro hac vice)
keisenlohr-moul@martensonlaw.com

*Counsel for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Chad Shoults, on behalf of himself and all others similarly situated | Case No. CV-19-02408-PHX-GMS |
| Plaintiff, | **JOINT MOTION FOR APPROVAL OF PROPOSED FLSA CLASS SETTLEMENT AND SUPPORTING MEMORANDUM** |
| v. | |
| G4S Secure Solutions (USA) Inc., | |
| Defendant. | |

Plaintiff Chad Shoults, on behalf of himself and the collective consisting of 181 Opt-in Plaintiffs who filed consents to opt in and have not withdrawn those consents (collectively "Plaintiffs" or "Opt-in Plaintiffs"), and Defendant G4S Secure Solutions (USA) Inc. ("Defendant" or "G4S"), jointly ask this Court to approve the Parties' proposed Settlement and dismiss with prejudice the claims in this action for Plaintiff Shoults and the Opt-in Plaintiffs.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiff Shoults filed this collective action under the Fair Labor Standards Act ("FLSA") on behalf of himself and other similarly situated G4S Security Officers in Arizona.   Shoults and the Security Officers alleged that they are required to work significant hours off-the-clock and should have received overtime pursuant to the FLSA. Through this action, Shoults seeks to recover overtime compensation the Security Officers have earned but not been paid.   Shoults also alleged violations of the Arizona Wage Statute, A.R.S. §§ 23-351-353.   Defendant denies any wrongdoing under either federal or state law, and denies it owes Plaintiffs any compensation or associated penalties. However, in an effort to avoid the costs and uncertainty of litigation, the Parties have agreed to resolve the disputed factual and legal issues on the terms set forth in the proposed settlement agreement ("Settlement Agreement"),[1] attached hereto as **Exhibit 1.**

The Settlement Agreement resolves all FLSA claims asserted in this action against Defendant and was crafted at arm's length by experienced counsel on both sides following over two and a half years of litigation, including a full-day mediation session with Amy Lieberman Esq., of Insight Mediation Group, LLC.   In total, Defendant has agreed to pay Plaintiff Shoults and the 181 FLSA Opt-in Plaintiffs $102,529 for their alleged overtime compensation claims.   Defendant has agreed to pay Plaintiff Shoults $75,000 to resolve his individual claim for retaliation.   Importantly, these amounts will not be reduced by

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement (Exhibit 1 hereto).

attorneys' fees or costs because Defendant has separately agreed to pay $617,471 for Class Counsel's reasonable attorneys' fees and costs. Defendant has also agreed to pay Plaintiff Shoults a service award of $5,000 for his time and effort in pursuing this litigation as a representative of the collective. As demonstrated below, the relief obtained for Plaintiffs represents a recovery that satisfies all criteria for fairness, reasonableness, and adequacy under the FLSA and Ninth Circuit law.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff Chad Shoults filed this FLSA collective action for unpaid overtime and an individual claim for FLSA retaliation on April 15, 2019 (D.E. 1). On February 27, 2020, Shoults filed a motion for conditional certification on behalf of himself and other similarly situated G4S Security Officers alleging that they were required to work significant hours off-the-clock and should have received overtime pursuant to the FLSA. *See* Plaintiff's Motion for Conditional FLSA Class Certification (D.E. 32). On July 31, 2020, the Court granted Plaintiff's Motion certifying an FLSA class comprised of all current and former G4S employees who worked as Security Officers for G4S from February 27, 2020 to the present. (D.E. 50).

Thereafter, on September 21, 2020, Class Counsel, per the Court's Order, distributed by mail, email and text message the Court-approved "Notice of Pending Fair Labor Standards Act Lawsuit" ("Notice") and "Consent to Opt-In to Collective Action" ("Consent Form"). The Notice explained that anyone who opted-in to the litigation was agreeing to designate Plaintiff Shoults to act as their agent to make decisions on their behalf concerning all matters pertaining to this litigation including settlement. The Notice also stated that the decisions and agreements made and entered into by Plaintiff Shoults would be binding on any individuals who joined the Class. Initially 189 individuals opted-in to the action by filing Consent Forms with the Court but during the course of this litigation, 8 Opt-In Plaintiffs withdrew, leaving the 181 Opt-In Plaintiffs who are currently encompassed by this Settlement in addition to Plaintiff Shoults. *See* D.E. Nos. 163, 233,

250, 252-254, 256, 259.

At this point in the litigation, the Parties have thoroughly investigated the claims alleged by Plaintiff Shoults via formal disclosure and discovery. The Parties have exchanged both initial and supplemental disclosures. The Parties have also propounded and responded to interrogatories and document requests and conducted numerous depositions, including that of Plaintiff Shoults, Defendant's own corporate representative and management employees (including Clara Lydon, Ashritha Madireddi, Henry Jones and Lucian Corneliu), and 11 Opt-In Plaintiffs. Finally, the Parties have undertaken considerable factual and legal research of their claims and defenses, including through significant motion practice.

**B.**    <u>**Settlement Negotiations**</u>

After more than two and a half years of litigating and preliminary informal settlement talks, the Parties attended a full-day mediation session on November 2, 2021 with Amy Lieberman, Esq. Plaintiff Shoults attended the mediation session to discuss resolution on behalf of the class for the FLSA overtime claims, as well as his individual claim for FLSA retaliation. While the Parties made some progress at the mediation, they were not able to reach a resolution that day. Over the course of the next few months, the Parties continued to engage in settlement negotiations that included continued involvement of the mediator. By February 18, 2022, the Parties had reached an agreement in principle and executed a detailed Memorandum of Understanding outlining the terms of the agreement. Thereafter, the Parties finalized a formal Settlement Agreement in accordance with the terms of the Memorandum of Understanding (Exhibit 1, hereto).

Pursuant to the Settlement Agreement, Defendant agreed to pay Plaintiff Shoults and the 181 Opt-in Plaintiffs $102,529 for their alleged back wages for overtime compensation and liquidated damages. Importantly, this amount will not be reduced by attorneys' fees or costs because Defendant has separately agreed to pay $617,471 for Plaintiffs' reasonable attorneys' fees and costs. Defendant has also agreed to pay Plaintiff Shoults a service award of $5,000 for his time and effort in pursuing this litigation.

Finally, Defendant has agreed to pay Plaintiff Shoults $75,000 for his individual claim for retaliation.  In total, Defendant has agreed to pay $800,000 pursuant to this Settlement, none of which is subject to reversion to the Parties.  If any portion of the $800,000 Settlement is not approved by the Court, the Parties agree that such amounts will be distributed *cy pres* to The National Institute for Workers' Rights.[2]

## III.    THE SETTLEMENT

As a direct result of this litigation and the settlement negotiations, Plaintiffs believe Defendant has agreed to a Settlement that provides Plaintiffs substantial value and the relief intended under the FLSA:

### A.    <u>Compensation for Unpaid Overtime</u>

Defendant has agreed to pay $102,529 to settle Plaintiffs' claims for unpaid overtime.  *See* Settlement Agreement, at ¶¶ 17, 29.  Class Counsel and Plaintiffs have fairly allocated these funds according to Shoults' and the Opt-In Plaintiffs' shifts and amounts earned during the relevant period of time.  The final agreed upon amounts for both Plaintiff Shoults and the 181 Opt-In Plaintiffs were adjusted for settlement purposes on a *pro rata* basis in accordance with their shifts, in light of weighing the risks of continued litigation.

Class Counsel calculated the amount of recovery for each of the Opt-In Plaintiffs by taking into account the detailed information available, including reviewing all of the documents obtained from Plaintiff Shoults and Defendant regarding Plaintiff Shoults' claim, as well as the testimony obtained in this case from the 11 Opt-In Plaintiffs who were deposed, and the discovery responses provided by 52 Opt-In Plaintiffs.  Based on that information, Class Counsel was able to calculate an average amount of off-the-clock time per shift each Opt-In Plaintiff worked.  Then, using that average of off-the-clock time

---

[2] The National Institute for Workers' Rights is an appropriate *cy pres* recipient should there be any remaining amounts not otherwise distributed from the Settlement. The organization is dedicated to supporting and advancing the rights of workers. Thus, the FLSA and the clinic share a similar purpose. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) ("The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours.").

worked and each Security Officer's claim period and hourly rate of pay according to the payroll records produced, Class Counsel was able to calculate an amount owed to each Opt-In Plaintiff.  The average settlement amount per Opt-In Plaintiff is $563.35, with the individual amounts ranging from $100.00[3] to $1,729.60, depending upon the amount of time each Plaintiff worked during the relevant period of time.  *See* Settlement Agreement, Exhibit A (setting forth the individual allocations).

Following entry of the Court's Approval Order and provision of any necessary tax information requested by the Administrator, the Administrator will mail out a Notice (*see* Exhibit B to the Settlement Agreement) and settlement checks to Shoults and the Opt-In Plaintiffs to compensate each of them for their FLSA overtime claims.  Plaintiffs will not be required to complete any additional claims forms to receive their settlement monies but will simply receive a settlement check issued from the Settlement Administrator and Notice explaining the Settlement and its effect of releasing their claims.  If any FLSA Opt-In Plaintiff does not provide information requested by the Administrator or does not negotiate their check within the allotted one year period, the money will be distributed to the *cy pres* recipient, The National Institute for Workers' Rights, an organization that Plaintiffs believe represents their interests.  More specifically, Plaintiffs will have 120 days from the date the Notice Packet is mailed to cash their settlement checks. After the 120-day period, any FLSA Opt-In Plaintiff who has not cashed their check may request a replacement check by contacting the Settlement Administrator. No replacement checks will be issued more than one year from the date the Notice Packet was mailed. Any monies remaining from un-cashed settlement checks after the one year period will be distributed *cy pres* to The National Institute for Workers' Rights, and in no event will it revert to either of the Parties.  *See* Settlement Agreement, at ¶ 29.

---

[3] 12 Opt-In Plaintiffs ultimately had no claim for overtime wages within the 3-year claim period.  Further, 25 Opt-In Plaintiffs (including two Opt-In Plaintiffs who made them themselves available for deposition), had claims totaling less than $100.00.  For each of these 37 Opt-In Plaintiffs, the parties agreed that they would receive a minimum $100.00 settlement payment.

Each of the FLSA overtime settlement payments will be taxed in accordance with the Settlement Agreement, as follows: (i) 50% will be allocated as wages for which IRS Forms W-2 will be issued; and (ii) 50% will be allocated as alleged penalties, interest, and other non-wage recovery for which IRS Forms 1099-MISC will be issued. *See* Settlement Agreement, at ¶¶ 12, 42. In accordance with those terms, the Settlement Administrator will calculate and withhold appropriate amounts for Employment Payroll Taxes from each amount designated as payment of wages for the FLSA overtime claims to the Named Plaintiff and FLSA Opt-In Plaintiffs in Exhibit A to the Settlement Agreement and submit those amounts to the appropriate taxing authorities. *See* Settlement Agreement, at ¶ 43.

The Notice Packets also will contain language notifying all FLSA Opt-In Plaintiffs who receive the Notice Packet of the waiver and release of their claims under the FLSA. The Release will become effective upon the entry of the Approval Order. *See* Settlement Agreement, at ¶ 37.

### B.    Plaintiff Service Award

The Parties agree that Plaintiff Shoults will receive a service award of $5,000 as compensation for bringing this case, serving as the class representative, providing documents and deposition testimony, actively monitoring and assisting his counsel in litigating this case, and participating in an all-day (10 hour) mediation that led to the resolution of this case. The service award will be paid separate and apart from, and will not diminish, the payment of claims to Plaintiffs as set forth above. *See S*ettlement Agreement, at ¶ 27.

### C.    Plaintiff Shoults' Retaliation Claim

To resolve Plaintiff Shoults' individual claim for FLSA retaliation, Defendant has agreed to pay him $75,000.00 and the Parties have agreed to enter into a General Release, attached as Exhibit C to the Settlement Agreement. Pursuant to the General Release, Named Plaintiff will release and forever discharge the Released Parties, of and from any and all claims, known and unknown, asserted and not asserted, which Plaintiff has or may have had against the Released Parties as of the date of execution of this Settlement

Agreement arising from his employment with Defendant.  The General Release is supported by the consideration being provided in light of his retaliation claim and the service award Defendant has agreed to pay.  Shoults' individual retaliation claim amount will be taxed in accordance with the terms of the Settlement Agreement as follows: (i) 25% will be allocated as wages for which IRS Form W-2 will be issued; and (ii) 75% will be allocated as damages for emotional distress for which an IRS Form 1099-MISC will be issued.  *See* Settlement Agreement, at ¶¶ 12, 42.

### D.    Costs & Attorneys' Fees

Finally, Plaintiffs' reasonable attorneys' fees and costs of the litigation in the amount of $617,471 will be paid by Defendant in accordance with the FLSA and pursuant to the Settlement Agreement.  None of the money being paid to the Named Plaintiff or Opt-In Plaintiffs is being reduced by attorneys' fees or costs because Defendant has agreed to pay an amount to cover reasonable attorneys' fees and costs separate and apart from the recovery to Plaintiffs.  *See* Settlement Agreement, at ¶ 26.  Even if one were to consider the entire $617,471 award without allocating any amount of attorneys' fees to Shoults' individual retaliation claim or towards the reimbursement of costs, this amount equates to approximately $3,393 in attorneys' fees and costs per each individual Plaintiff for almost three years of legal services and costs, which is eminently reasonable especially in light of the results achieved.

## IV.    JUDICIAL APPROVAL OF COLLECTIVE ACTION SETTLEMENTS OF FLSA CLAIMS IS REQUIRED

Employees cannot waive claims for unpaid wages under the FLSA without court approval.  As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982), in FLSA actions "brought directly against their employer under Section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness."  Accordingly, where an employer and an employee have negotiated a settlement agreement, an employer will be

relieved of liability from future lawsuits only if the agreement is supervised by the Department of Labor or approved by a federal court. *See Thornton v. Solutionone Cleaning Concepts, Inc*., 2007 WL 210586, at \*3 (E.D. Cal. Jan. 26, 2007). The Ninth Circuit has implicitly indicated that it would follow the Eleventh Circuit's *Lynn's Food Stores* decision. *See Dent v. Cox Commc'n Las Vegas, Inc*., 502 F.3d 1141, 1144 (9th Cir. 2007). The Arizona District Court has also relied on *Lynn's Food Stores*. *See Hand v. Dionex Corp.*, 2007 WL 3383601, at \*1 (D. Ariz. Nov. 9, 2007).[4] Accordingly, the Parties jointly ask for the Court's approval of the proposed Settlement in this case.

## V.    PLAINTIFFS' SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

As a general matter, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco ("Officers for Justice")*, 688 F.2d 615, 625 (9th Cir. 1982); *accord U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) ("We are committed to the rule that the law favors and encourages compromise settlements. We recently noted that there is an overriding public interest in settling and quieting litigation.") (*citing Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)). This policy of encouraging settlement of litigation equally applies in the context of FLSA litigation when there are bona fide issues in dispute and employees are represented by "an attorney who can protect their rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

In the Ninth Circuit, courts determine whether a class action settlement is fundamentally fair, adequate, and reasonable by looking at the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "Settlement is the offspring of compromise; the question we address is not whether the final product could be

---

[4] In *Hand*, the District Court addressed the issue when approving an FLSA settlement. *See* 2007 WL 3383601, at \*1. The parties asked for an Order to be entered specifically approving their settlement agreement. The Court approved the settlement agreement, noting that typically, "the Court does not rule on private settlement negotiated between parties. But because Plaintiffs filed a FLSA action against Defendant, the parties must seek approval of their stipulated settlement in order to ensure enforceability of the Settlement Agreement." *Id.* (*citing Lynn's Food Stores*, 679 F.2d at 1352-53 and *Thornton*, 2007 WL 210586).

prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id*. at 1027.  Further, in a FLSA case in particular, it is important to consider the policy purposes of the FLSA in determining whether the settlement is fair.  *See Goudie v. Cable Commc'ns, Inc.,* 2009 WL 88336, *1 (D. Or. Jan. 12, 2009) ("In reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes."); *Collins v. Sanderson Farms,* 568 F.Supp.2d 714, 717 (E.D. La. 2008) ("The Court's role [in reviewing a FLSA settlement] is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to [Rule 23], and derives from the special character of the substantive labor rights involved.").

In reviewing the totality of the circumstances, there are no "universally used 'factors to consider in evaluating a proposed FLSA settlement,' for whether it is fair and reasonable" but "some factors courts have looked at are: '(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Panico v. Turnbull L. Grp. LLC,* 2022 WL 220485, at *1–2 (D. Ariz. Jan. 25, 2022) (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016) (citations omitted) and *Lockwood v. R&M Towing LLC*, 2020 WL 5724383, at *2 (D. Ariz. Sept. 24, 2020)). Ultimately, courts evaluate whether a settlement agreement of FLSA claims is fair and reasonable under the totality of the circumstances.  *Selk*, 159 F. Supp. 3d at 1173; *see also Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  As shown below, a review of the relevant factors supports the Court's approve as to this FLSA Settlement.

A.    **The Probability of Plaintiff Succeeding on the Merits Regarding the Dispute**

In an FLSA collective action settlement, a bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Lockwood,* 2020 WL 5724383, at *2. Here, given the advanced stage of this litigation, there is clearly defined bona fide dispute. Plaintiffs have provided extensive evidence demonstrating they engaged in off-the-clock work in excess of 40 hours per week for which they were not paid in violation of the FLSA, and Defendant denies these and all substantive allegations. Further, Plaintiff Shoults provided extensive evidence demonstrating the retaliatory actions taken by Defendant as a result of his complaints regarding Defendant's unlawful wage practices, which Defendant wholly denies. Thus, a bona fide dispute exists, and it would be resolved by the proposed Settlement Agreement.

In addition to whether there is a bona fide dispute, the courts consider the probability of Plaintiffs' success on the merits as to that dispute. *Linney*, 151 F.3d at 1242. A court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should the court substitute its opinion for that of Class Counsel and Plaintiffs. Indeed, as the Ninth Circuit explained:

> Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (internal citations omitted).[5]

Here, Plaintiffs and Class Counsel have carefully assessed the probability of ultimate success on the merits vis-a-vis the risks of establishing liability and damages. While Plaintiffs believe that their case is strong – and negotiated the Settlement on that basis – a finding of liability is never assured. This is especially true because Defendant was zealously represented by counsel with experience specifically related to litigating

---

[5] The Court may not modify the proposed settlement, but must approve or disapprove of the proposed settlement "as a whole" in relation to all of those covered by it. *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986).

FLSA claims.   Likewise, Defendant strongly believes that the purported collective is subject to decertification and dismissal as outlined in its dispositive filings with this Court.

Moreover, this case presented bona fide disputes over numerous legal and factual issues, including, but not limited to, whether Plaintiffs could prove the amount of damages owed with reasonable specificity; whether Defendant willfully violated the statute or acted in good faith; whether Defendant retaliated against Shoults and whether liquidated damages are appropriate.   As such, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the Class would be obtained.   Accordingly, although Class Counsel were confident that they would develop a convincing case, they were also aware that trials are unpredictable.   *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997) ("[T]he one constant about litigation . . . is that the ultimate jury result is uncertain, unknown and unpredictable.").

### B.    Continued Litigation Would Be Long, Complex and Expensive

The expense, complexity and possible duration of litigation are the next factors considered in evaluating the reasonableness of a settlement.   *See Linney*, 151 F.3d at 1242. Here, litigating this action through trial would continue to be expensive and time-consuming.   Defendant's resistance to Plaintiffs' claims has been considerable.   The Parties have vigorously disagreed with each other on numerous key factual and legal issues, including, *inter alia*, the issues identified in Section (V)(A) above.   Defendant has already filed a partial motion for summary judgment and a motion to decertify the action, which Plaintiff vigorously opposed.   Should the litigation continue and the Court rule on those motions, it is probable that the result would be appealed, easily extending the litigation for several more years.   Absent this Settlement, it is uncertain when this litigation would end even if Plaintiffs were successful at trial.   Any trial on the action could last several weeks and any verdict would likely result in an appeal and further motion practice.   In such circumstances, Plaintiffs would likely obtain no recovery for years.   The fact that the Settlement, if approved and becomes effective, will eliminate such expenses, delays and uncertainties, favors its approval.   *See Officers for Justice*, 688 F.2d at 629 (finding that the

immediate and tangible benefits to the class members from the settlement outweighed any speculative judgment that may be obtained after trial and appeal).  Accordingly, by reaching this Settlement, the Parties have avoided further protracted litigation in favor of a more prompt resolution of the Plaintiffs' claims against Defendant, while providing meaningful relief and timely benefits.

### C.    The Risk of Maintaining FLSA Certification to Trial

Courts also consider the risk that the FLSA certification may be successfully challenged as the case proceeds toward trial.  *See Linney*, 151 F.3d at 1242; *see, e.g.*, *Camp v. Progressive Corp.*, 2004 WL 2149079, at *10 (E.D. La. Sept. 23, 2004).  As noted above, following discovery, Defendant sought to challenge certification of the FLSA class by filing a motion to decertify the class (D.E. 299). While Plaintiffs believe they were properly certified as a collective action, Defendant has argued that the Plaintiffs are not similarly situated because individual circumstances related to how they performed their job duties differentiated the Security Officers.  *Id*.  However, because Plaintiffs' burden of showing that they are similarly situated would be heavier, more fact-intensive, and require substantial Court analysis at the decertification stage (*see Camp*, 2004 WL 2149079, at *10), this risk of decertification further supports the Settlement.

### D.    The Range of Possible Recovery

The settlement amount viewed considering the range of possible recovery also supports the reasonableness of this Settlement.  In assessing this factor, "the Court is to 'determine the value of the settlement in light of the potential for recovery.'" *Police Officers v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999).  But in making this comparison, "the trial judge ought not try the case in the settlement hearings." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  And, it should not "be forgotten that compromise is the essence of a settlement." *Id*.  Indeed, as explained by the court in *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo.1974):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.

In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

64 F.R.D. at 624 (*quoted in Police Officers*, 188 F.R.D. at 458-59); *see also Camp*, 2004 WL 2149079, at *5 (approving FLSA collective action settlement, noting that "the court is aware, as the parties must also be, that a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution'") (quotations omitted). Further, the settlement amount need not represent a specific percentage of the maximum possible recovery. *See Selk,* 159 F.Supp.3d at 1174 (citing *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.")).

Here, Defendant has agreed to a Settlement that provides Plaintiffs with the type of relief intended under the FLSA and sought in this litigation: compensation for alleged unpaid overtime, liquidated damages and their court costs and attorneys' fees in bringing this lawsuit. *See supra*, Section III. Further, the settlement payments directly relate to each Plaintiff's length of employment and hourly wage. *See Barrera v. US Airways Group Inc.,* 2014 WL 12639342, at *2 (D. Ariz. May 23, 2014); *In re Sepracor Inc. Fair Labor Standards Act (FLSA) Litig.,* 2009 WL 3253947, at *2 (D. Ariz. Oct. 8, 2009.) Accordingly, the Settlement is fair and reasonable because, if approved, Plaintiffs will have recovered the relief they sought through this lawsuit. *See*, *e.g.*, *Cotton*, 559 F.2d at 1330 ("The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms."); *Access Now, Inc. v. Cunard Line Ltd., Co*., 2001 WL 1622015, at *1 (S.D. Fla. Oct. 31, 2001) ("Plaintiffs have obtained much of the relief they sought in their complaint, weighing heavily in favor of the settlement's approval.").

Moreover, the proposed Settlement provides monetary payments for back wages for each Plaintiff who allegedly worked within the broadest FLSA statute of limitations – three years. The average payment per Opt-In Plaintiff is $563.35, with the individual settlement payments per Opt-In Plaintiff ranging from $100.00 to $1,729.60 and the settlement amount for Plaintiff Shoults is $1,104.45. This is within the range of reasonableness for an

FLSA collective action. *Compare, e.g., Camp*, 2004 WL 2149079, at *6-7 (upholding FLSA collective action settlement where average settlement amount was $273 for each member of one class and $503 for each member of another class); *Su v. Electronic Arts, Inc.*, 2006 WL 4792780, at *2 (M.D. Fla. 2006) (approving FLSA settlement where payments to the plaintiffs and class members ranged from $619 to $16,037); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (approving FLSA settlement of forty employees where the average settlement amount for each class member was $1,875).

Further, Class Counsel believe that the recovery each FLSA Opt-In Plaintiff will receive is well within the range of reasonableness when comparing the settlement amount to the potential recovery Plaintiffs could have obtained at trial. *See, e.g., Selk,* 159 F. Supp. 3d at 1174-1175. For settlement purposes, the Security Officers' compensation has been calculated based on 4 minutes of off-the-clock work performed for every shift throughout the entire time the Named Plaintiff and the Opt-In Plaintiffs were employed by G4S according to the payroll records produced in this case. While Class Counsel believe that the evidence that has been produced in this case supports that the Security Officers worked approximately an average of 10-15 minutes off-the-clock per shift (*see, e.g.,* Plaintiff's Response to Defendant's Motion for Decertification, D.E. 319 at 7, 9 and n. 9, 17-18, 21), Class Counsel also recognize that recovering for 10-15 minutes per shift is an unlikely prospect given the existence of some contradictory evidence demonstrating that the off-the-clock work may not have been associated with every single shift worked by all Security Officers at every single G4S location. By utilizing a 4 minute per shift estimate, the Settlement provides the Opt-In Plaintiffs damages in the amount of approximately 26%-40% of what Class Counsel roughly estimated would be their maximum recovery if fully successful at trial based on the discovery in the case.[6] This range clearly indicates that the

---

[6] Even if one were to compare the recovery provided by this Settlement to an estimated 10-15 minutes off the clock before ***and*** after each and every shift (for a total of 20-30 minutes a day) – an exceptionally high estimate based on the evidence in the record – then this Settlement would still provide approximately 13-20% of maximum available to the FLSA

recovery to Opt-In Plaintiffs for overtime back wages as a result of this Settlement is clearly reasonable and, thus, approval of the Settlement is warranted. *See, e.g., Quintana v. HealthPlanOne LLC,* 2019 WL 3342339, at *3 (D. Ariz. July 25, 2019) (finding settlement of wage and hour class action for "one-half or one-third of the total possible recovery" to be reasonable); *Selk,* 159 F. Supp. 3d at 1175 (finding range of 26% to 50% of the "best possible recovery" at trial (as compared to the recovery the plaintiff originally sought which had been "narrowed considerably" over the course of the litigation due to discovery and dismissal of plaintiff's state law claim) was "in the range of reasonableness"). Upon agreeing to the calculation based on recovery of 4 minutes off-the-clock work per each shift, the Parties agreed that for tax purposes 50% of each allocated settlement amount would be treated as wages and 50% as alleged penalties, interest, and other non-wage recovery, which further benefits the individual Opt-In Plaintiffs.

## E.    The Extent of Discovery Completed and Stage of the Proceedings

The extent of discovery and stage of the proceedings further support approval of the proposed Settlement. *Linney,* 151 F.3d at 1242. As explained above, this case was not in its infancy when Settlement was reached. For over two and a half years, the Parties had been actively investigating and pursuing Plaintiffs' claims through the completion of discovery in July 2021. Consequently, the Parties had a solid base of information upon which to negotiate this Settlement. *See, e.g.*, *Frank*, 228 F.R.D. at 179, 185 (approving proposed settlement where the court found that "the parties [had] engaged in extensive discovery to identify the potential class members and to calculate the number of overtime hours worked and the relevant rates of pay," which included reviewing "several hundred pages of records").

## F.    Scope of the FLSA Settlement Release is Fair and Reasonable

Opt-Ins if fully successful at trial, still within the range of reasonableness. *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery).

This Settlement releases all claims or potential claims for unpaid overtime, attorneys' fees/costs, liquidated damages, and penalties that are based upon or derive from alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and/or A.R.S. § 23-350, *et. seq.*, against the Released Parties.  Because this release provision generally tracks the wage and hour claims asserted in the lawsuit, the scope of the release does not weigh against the Settlement being fair and reasonable.  *See, e.g., Selk,* 159 F.Supp.3d at 1178.  In addition, the release takes effect for the Plaintiffs as of the date of the approval order regardless of whether they cash their settlement checks, which is thoroughly explained in the Notice and consistent with the authorization they provided Plaintiff to settle the case when the opted-in to the lawsuit.  *See* Settlement Agreement, at ¶ 37; *see* Consent Form.  Importantly, even if the Plaintiffs do not cash their checks within the one-year period they are given to do so, that money is distributed *cy pres* to The National Institute for Workers' Rights, an organization that Plaintiffs believe is aligned with helping workers similar to the Plaintiffs and provides a meaningful benefit to them in exchange for the release. *Id*. at ¶ 29.

**G.    The Experience and Views of Class Counsel and Participating Plaintiffs**

In reviewing a class settlement, the Court should accord "great weight" to Class Counsel's recommendations.  *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999); *Cotton*, 559 F.2d at 1330; *Police Officers*, 188 F.R.D. at 461.  Here, Class Counsel are experienced class action and employment litigation attorneys.  Utilizing their experience, Class Counsel thoroughly investigated and vigorously litigated this case for almost three years and successfully negotiated an excellent Settlement for Plaintiffs.  And, Class Counsel assumed considerable risk in taking on this matter where fees were dependent on the outcome further demonstrating their dedication and belief in Plaintiffs' claims; Class Counsel has worked on this case for almost three years and has yet to recover any fees or costs. Class Counsel submit that the proposed Settlement is in Plaintiffs' best interests.  *See* Affidavit of Ty D. Frankel ("Frankel Affidavit), attached hereto as **Exhibit 2**, at ¶¶ 3-10, 18-22.

1    Further, each of the 181 Opt-In Plaintiffs consented to have Plaintiff Shoults "act as

2    [their] agent and make decisions on my behalf." *See* Consent to Opt-In to Collective

3    Action. In that regard, Plaintiff Shoults took an active role in the settlement negotiations

4    throughout the all-day mediation session and the months that followed and understood his

5    obligations to represent the best interests of the class. *See* Frankel Affidavit at ¶¶ 19-22.

6    Plaintiff Shoults is pleased with the result achieved in this Settlement in light of the

7    relevant risks of further litigation. *Id.* at ¶ 20.

8        **H.    Plaintiff Shoults' Individual Retaliation Claim Settlement Does Not**

9              **"Contaminate" the FLSA Settlement**

10    This Settlement also resolves Shoults' individual FLSA retaliation claim. Shoults'

11    damages amount for the retaliation claim was negotiated separate and apart from the Opt-

12    In Plaintiffs' FLSA claims and the settlement of Shoults' retaliation claim will in no way

13    reduce the amount of back wages the FLSA Opt-In Plaintiffs will recover. Importantly,

14    Shoults was mindful of his obligations to the Opt-In Plaintiffs throughout both the

15    litigation and mediation process and at no time did his personal circumstances impact his

16    ability to act in the best interests of the Opt-In Plaintiffs. *See* Frankel Affidavit at ¶ 22.

17    Thus, the settlement of Shoults' individual retaliation claim does not "contaminate" the

18    settlement of Shoults and the Opt-In Plaintiffs' FLSA overtime wages claims. *See, e.g.,*

19    *Fitzwater v. Cole*, 2019 WL 6270235, at *5 (S.D. Ala. Nov. 22, 2019) ("[T]he Court need

20    not weigh in on whether [a retaliation settlement] is fair and reasonable so long as it does

21    not contaminate the compromise of the Plaintiffs' claims for back pay and liquidated

22    damages."); *Thompson v. Dealer Mgmt. Serv., Inc.*, 2016 WL 7644856, at *2 (M.D. Fla.

23    Dec. 13, 2016) (citations omitted), report and recommendation adopted, 2017 WL 37941

24    (M.D. Fla. Jan. 4, 2017) (Generally, "[a] settlement of FLSA retaliation claims does not

25    require court approval, so long as the settlement does not contaminate the settlement of an

26    FLSA back wage claim.")

27    And, even though approval of Shoults' individual retaliation claim is not required,

28    here it should be approved as the settlement terms as to retaliation claim, like the FLSA

claims, are similarly fair and reasonable. To resolve his individual retaliation claim, Defendant has agreed to pay Shoults $75,000 for compensatory damages, including front pay wages and mental anguish arising from emotional distress or pain and suffering. Further, in addition to releasing his overtime claims as set forth above, the Parties have agreed to enter into a general release of all claims arising from his employment at G4S, as set forth in the General Release (Settlement Agreement, Exhibit C). The General Release is supported by consideration for his individual retaliation claim as well as receiving a service award. General Releases, like the instant one, that provide "compensation in addition to that which [he] is entitled under the FLSA, [] can be permissible." *See, e.g., Weldon v. Backwoods Steakhouse, Inc.*, 2014 WL 4385593, at *1 (M.D. Fla. Sept. 4, 2014) (finding general release "permissible" where plaintiffs received consideration for their releases "wholly unrelated to the value of their FLSA claims, for which Plaintiffs are being fully compensated"). Shoults' General Release does not in any way impact the scope of the release of the Opt-In Plaintiffs' claims, which is limited to claims for unpaid overtime as described in section F above.

Here, the relevant factors considered in the Ninth Circuit demonstrate that the proposed Settlement in this case is fundamentally fair, adequate and reasonable and, therefore, should be approved.

## VI.    CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AND COSTS AWARD IS FAIR AND REASONABLE

### A.    Reasonable Attorneys' Fees and Costs are Mandatory in FLSA Cases

The FLSA's fee-shifting provision requires employers, including those that settle cases, to pay the employee's reasonable attorneys' fees and costs in having to bring a lawsuit to recover his unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action.") (emphasis added); *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorneys' fee.").

1    The reason for requiring the employer to pay the employee's legal fees is simple.

2    As the Ninth Circuit explained, "[u]nder the FLSA, 'Congress intended that the wronged

3    employee should receive his full wages plus the penalty without incurring any expense for

4    legal fees or costs.'"  *Sinyard v. C.I.R.*, 268 F.3d 756, 761 (9th Cir. 2001) (*quoting*

5    *Maddrix v. Dize*, 153 F.2d 274 (4th Cir. 1946)).  Indeed, "allowing an award of attorney's

6    fees under FLSA cases … encourage[s] employees to vindicate what Congress considers

7    an important right to receive wages designed to ensure a minimum standard of living."

8    *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) (further explaining that

9    "the plaintiff acts as a private attorney general"); *see also Houser v. Matson*, 447 F.2d 860,

10    863 (9th Cir. 1971) (holding that the district court "frustrated Congressional purpose by

11    leaving the onus of counsel fees entirely upon the successful employees").

12    And, unlike in other types of cases, in an FLSA case, "[s]ettlement does not

13    preclude an award of fees."  *Fisher*, 648 F. Supp. at 486.  The employer's payment of the

14    employee's attorneys' fees is still mandated in such cases.  *See*, *e.g.*, *Diaz v. Robert Ruiz,*

15    *Inc.*, 808 F.2d 427, 428 (5th Cir. 1987) (plaintiff entitled to attorneys' fees for FLSA

16    claims, where parties settled on eve of trial regarding merits of case, but not attorneys'

17    fees); *Yue Zhou*, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007) ("Settlement of FLSA

18    overtime claims cannot preclude an award of attorneys fees by the court . . . under the

19    FLSA an award of reasonable fees is mandatory.") (*citing* 29 U.S.C. § 216(b)); *Jaquez v.*

20    *Maeweathers Transp., Inc.*, 2007 WL 1200993, at *3 (M.D. Fla. April 23, 2007) ("[g]iven

21    the mandatory award of reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b), early

22    resolution of FLSA claims through settlement are encouraged" to keep the amount of

23    attorneys' fees reasonable – not to extinguish them).  Thus, the payment of Plaintiffs'

24    reasonable attorneys' fees and costs is not only proper but required.

25    **B.    An Agreed-Upon Fee Carries a Presumption of Reasonableness**

26    It is common for Parties to a class settlement to agree that the defendant will pay

27    attorneys' fees to plaintiff's counsel separately from the benefits provided to the class.

28    Such an arrangement poses no particular problem for court approval.  In fact, federal courts

at all levels encourage litigants to resolve fee issues by agreement whenever possible.  As the United States Supreme Court explained, "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).[7]

Further, as explained by the court in *In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992), *appeal dismissed*, 33 F.3d 29 (9th Cir. 1994), fees negotiated by the parties at arm's length carry a presumption of reasonableness:

> The fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

*Accord* Manual for Complex Litigation § 30.42, at 240 (3d ed. 1997) (a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

Moreover, the virtue of a fee negotiated by the parties at arm's length is that it is, essentially, a market-set price.  Defendant has an interest in minimizing the fee; plaintiffs have an interest in maximizing it; and the negotiations are informed by the Parties' knowledge of the work done and result achieved and their views on what a court may award if the matter were litigated.  In *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed this type of market-

---

[7] *See, e.g., Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); *Hanlon*, 150 F.3d at 1029 (upholding the district court's award of attorneys' fees, citing lack of abuse of discretion, where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

- 21 -

based approach to evaluating fee requests: "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price." *Id*. at 568. "It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id*. "Markets know market values better than judges do." *Id*. at 570. "The object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation . . . ." *Id*. at 572.

Here, the proposed settlement amount reflects a market price. This is not a common-fund settlement where defendants typically have little interest in how much of the settlement consideration is allocated to attorneys' fees. Rather, here, in arm's-length negotiations, Defendant, a sophisticated company was aided by experienced counsel with specific experience litigating FLSA cases, sought to minimize the fees that they had to pay in addition to the money they will be paying Plaintiffs, and therefore defense counsel had a keen interest in negotiating the smallest amount their clients would have to pay.

Additionally, as explained in *McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006), if the attorneys' fees and costs are paid "entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members," as opposed to where the award of fees is to be paid from a common fund and essentially is "money taken from the class," and "then the Court must carefully review the award to protect the interests of the absent class members." *Id*. at 392 (*citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123-24 (2d Cir. 2005) and *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *accord Su*, 2006 WL 4792780, at *3 (explaining that the court has "greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fees" when those fees are not being deducted from the employee's settlement).

Indeed, the holding in *McBean* is consistent with the purpose of the court's approval of attorneys' fees – to ensure that the employees' recovery is not unreasonably reduced by attorneys' fees, not to protect the employer from his own bargain. *See Jaquez v. Maeweathers Transp., Inc.*, 2007 WL 1200993, at *3 (M.D. Fla. Apr. 23, 2007)

(explaining that a court has more discretion in determining the reasonableness of attorneys' fees, "where separate amounts are set forth for the payments of unpaid wages and payments for attorneys fees" because the purpose of the court's review "is to ensure that an employer does not take advantage of an employee … not to ensure that the employee does not overcharge the employer").  Accordingly, courts are permitted to award an agreed upon amount for attorneys' fees especially where that amount is *in addition to and separate from* the defendant's payment to the class.[8]

Consistent with the intent of the FLSA, Class Counsel in this case are not taking any portion of Plaintiffs' Settlement to cover their attorneys' fees and costs.  Instead, an integral portion of the proposed Settlement is Defendant's agreement to pay Class Counsel a lump sum of $617,471 for reasonable attorneys' fees and costs, inclusive of fees and costs for both the collective and individual retaliation claims.  This amount is completely separate and apart from and will not in any way diminish Plaintiffs' Settlement.  Thus, as the attorneys' fees and costs award requested in this case was agreed to by all Parties and does not diminish Plaintiffs' relief, this Court should approve the Settlement Agreement.

C.    **The Attorneys' Fees and Costs are Not Measured Against Plaintiffs' Payment**

If attorneys were not awarded fees, but rather were limited to a traditional contingency amount, such as one-third of the client's recovery, very few attorneys would accept these types of cases where the recovery is relatively small and there is sizable risk of no recovery at all.  For this reason, fee awards in FLSA and other socially beneficial cases are not measured in relation to the underlying monetary relief obtained for the plaintiffs. *See Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988); *see, e.g., Int'l Brotherhood*

---

[8] For purposes of settlement, there has not been a specific allocation of attorneys' fees to Shoults' individual retaliation claim.  This is especially reasonable here as it would have been overly complicated to attempt to separate out time associated with only the retaliation claim considering that there was a significant overlap in how the claims were litigated.  For example, with regard to the depositions of Plaintiff Shoults and G4S management, the depositions were taken with a dual purpose in mind and the fees incurred would be applicable to both the collective FLSA claim and the individual retaliation claim.

*of Carpenters and Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Construction, Inc.*, 136 Fed. Appx. 36, at *2 (9th Cir. May 11, 2005) (upholding attorneys' fee award of more than $200,000 in action where the plaintiff's individual recovery was less than $50,000); *Morales v. City of San Rafael*, 96 F.3d 359, 362-64 (9th Cir. 1996) (reversing $20,000 attorneys' fee award where counsel had requested nearly $140,000 in fees, because it appeared to the Ninth Circuit that the district court was improperly trying to limit the fee award based on the size of the plaintiff's award); *see also Alvarez v. Direct Energy Business Marketing LLC*, 2020 WL 1032800, at *3 (D. Ariz. March 3, 2020) (upholding fee and costs award of $624,829 where recovery to the opt-in class members was $132,602); *Mejia v. Bimbo Bakeries USA, Inc.*, No. 4:16-cv-00654-JAS (D. Ariz.) (D.E. 152, at 4-6 and D.E. 154) (upholding fee and costs award of $344,850 where recovery to the opt-in class members was $105,150); *Hanna v. ComTrans, Inc.*, No. 16-cv-01282 DLR (D. Ariz.) (upholding fee and costs award of $315,000 where recovery to the opt-in class members was $105,000) (D.E. 146 at 4-6 and D.E. 149). Thus, in FLSA cases, an award of "reasonable" attorneys' fees and costs is mandatory and is not measured against the size of Plaintiffs' recovery.

Moreover, awarding fees "encourages plaintiffs to bring legal actions even where the amount in question may be relatively small in comparison to other civil actions in the federal courts." *Fisher*, 648 F. Supp. at 487. In fact, as explained by the Sixth Circuit, courts are encouraged to reward counsel who undertake such socially beneficial cases:

> The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here "encourage[s] the vindication of congressionally identified policies and rights." Indeed, we have "upheld substantial awards of attorneys' fees even though a plaintiff recovered only nominal damages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (citations omitted); *see also Frank*, 228 F.R.D. at 189 ("As already noted, were it not for this class action, many of the plaintiffs' claims likely would not be heard. In addition, if this Court denied an award of fees sufficient to compensate counsel for at least a substantial portion of the work it has performed, no attorneys – these or others – would likely be willing to take

1
2
> on future small-scale class actions such as this."). The relevant inquiry in this type of case therefore is whether the fees are reasonable, not how they compare to the employee's recovery, which is often small.

3 And, as the court noted in *Lopez v. Youngblood*, in approving the agreed-upon fee award to

4 be paid separately from class members' recovery, defendants "would receive an unjustified

5 windfall if the requested fees were not granted in full," because "one important purpose of

6 the class action device is that defendants should not benefit from their wrongdoing, and

7 should be deterred from doing so by being vulnerable to class actions to remedy their

8 wrongful conduct." 2011 WL 10483569, at *15 (E.D. Cal. Sept. 2, 2011). The *Lopez* court

9 reasoned: "To the extent [attorneys] are not properly awarded when they are successful,

10 that undermines the deterrent purpose of the class action mechanism." *Id*.

11
12
> **D.   The Requested Fee and Costs Award is Less Than Class Counsel's Lodestar, Further Establishing That it is Fair and Reasonable**

13 Here, the requested fee and costs award is fair and reasonable, especially because it

14 is less than Class Counsel's lodestar and also accounts for reimbursement of costs incurred

15 in this litigation which further reduces the attorneys' fees portion of the award.

16 Specifically, out of the $617,471 attorneys' fees and costs award Class Counsel are

17 seeking, $580,095.38 would account for attorneys' fees (as compared to Class Counsel's

18 actual $763,337.50 in lodestar) and $37,375.62 would reimburse Class Counsel for costs

19 already incurred in this litigation and to pay for upcoming settlement administration costs.

20 It is generally recognized that the lodestar presumptively reflects reasonable

21 attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see, e.g.*,

22 *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1011 (9th Cir. 2004) (affirming trial

23 court's attorneys' fee award twice exceeding the amount of recovery because it was

24 calculated using the lodestar method).[9]   The lodestar is calculated by multiplying the

25
26
27
28
[9] The lodestar is the "guiding light" in FLSA cases as well. *See City of Burlington*, 505 U.S. at 562 ("[C]ase law construing what is a 'reasonable' fee applies uniformly to all" federal fee-shifting statutes.); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (noting that "statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures"); *Beck*, 2005 WL 235510, at *1 (reasoning that "in fixing the amount of attorney fees [in FLSA cases], courts generally begin with a 'lodestar' calculation").

reasonable number of hours expended in the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). However, in calculating the lodestar for this purpose – as a cross-check – the Court need not "attempt to rigorously calculate a lodestar figure." *McBean*, 233 F.R.D. at 392 n.11. As shown below, the lodestar cross-check in this case fully supports the Parties' agreement to have Defendant pay the agreed upon $617,471 in attorneys' fees and costs.

In determining the reasonableness of hours expended for lodestar purposes, courts consider, *inter alia*, the novelty and difficulty of the issues and the level of opposition during the litigation. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 321 (5th Cir. 1993). Here, Class Counsel were opposed by counsel with considerable experience defending employment actions. Class Counsel showed demonstrable skill and quality by engaging in a concerted effort to obtain Plaintiffs' maximum recovery. Class Counsel expended numerous hours, *inter alia*, interviewing Plaintiffs, seeking certification of the action, engaging in extensive discovery and depositions, analyzing hundreds of pages of documents, responding to decertification and summary judgment motions, and negotiating this Settlement. Over the course of almost three years, Class Counsel has reasonably spent about 2,231 hours working on this lawsuit as of March 28, 2022.[10] *See* Frankel Affidavit at ¶¶ 5-13. Moreover, due to the personalized nature of this case, Class Counsel has spent a

---

[10] Class Counsel's lodestar was calculated from and is fully supported by contemporaneous, daily time records, which Class Counsel regularly prepared and maintained in the ordinary course of business. *See* Frankel Affidavit at ¶ 11. Class Counsel have not provided detailed time records. *See Shames*, 2012 WL 5392159, at *19 (citing *Fox v. Vice*, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011) (holding counsel need not submit detailed time sheets as "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.") (internal quotations and citations omitted)); *see also Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *Hemphill v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion). However, if this Court desires, Class Counsel will submit a detailed billing statement for *in camera* review.

significant amount of time speaking and corresponding with Plaintiff Shoults and the numerous Opt-In Plaintiffs (including preparing for and defending 11 Opt-In Plaintiff depositions and preparing written discovery responses for Opt-In Plaintiffs) about this case, the factual background, litigation strategy and settlement. *See id.* The total amount of hours expended in successfully and diligently prosecuting this action is fair and reasonable for the services provided.

In determining the reasonableness of hourly rates, courts consider the experience, reputation and ability of the attorneys and the skill required by the attorneys. *Shipes*, 987 F.2d at 320. However, counsel's rates are *prima facie* reasonable when (i) agreed to by the parties, (ii) computed at no more than the attorneys' customary billing rate *or* (iii) within range of the prevailing market rate. *See Camp*, 2004 WL 2149079, at *20. For example, in *Su*, although the district court believed that $640 an hour was a high rate, it nevertheless approved the attorneys' fees requested because the defendants had agreed to pay them:

> Defendant does not contest the number of hours, the billing rate, or amount of attorney's fees and costs. In fact, Defendant joins in moving for entry of judgment, and stated that it believes that the attorney's fees are reasonable. The Court, therefore, accepts the parties' stipulation, and finds that an award of $120,000 in attorneys' fees and costs is reasonable.

*Su*, 2006 WL 4792780, at *5.

Here, Class Counsel's customary billing rates ranged from $190 (paralegal) to $400 an hour and at rates which have previously been approved in FLSA actions in this District. *See, e.g., Alvarez,* 2020 WL 1032800, at *3, and Unopposed Application for Plaintiff's Attorneys' Fees and Costs and Service Awards, at D.E. 272 at 12-13; *Mejia v. Bimbo Bakeries USA, Inc.*, No. 4:16-cv-00654-JAS (D. Ariz.) (D.E. 152, at 23 and D.E. 154); *Hanna v. ComTrans, Inc.*, No. 16-cv-01282 DLR (D. Ariz.) (D.E. 146 at 22-23 and D.E. 149). At their standard billing rates, Class Counsel's lodestar as of March 28, 2022 is approximately $763,337.50.[11] Class Counsel are not seeking that full amount, however, but

---

[11] This amount includes additional time expended in this litigation following the November 2021 mediation when negotiations regarding attorneys' fees begun (such as drafting and negotiating the Memorandum of Understanding and proposed Settlement Agreement and briefing the instant

rather have agreed to greatly reduce their fees to settle the case.  Their agreement to settle for $617,471 is reasonable for this type of case and the amount of work performed.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *22 (C.D. Cal. June 10, 2005) (noting "that [a] class plaintiffs' request for substantially less recovery [than the lodestar amount] is indicia that the fee amount requested is reasonable").  As the lodestar cross-check confirms that the final element of the Settlement Agreement – the attorneys' fees provision – is reasonable, the Court should approve the Settlement.

However, it is even more reasonable when considering that from the $617,471 agreed upon amount, Class Counsel also seek to be reimbursed for the reasonable and necessary costs they advanced to prosecute this litigation since its inception in 2019.  The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlements.  *See Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003).  "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  The FLSA also requires costs be paid for by Defendant.  *See* 29 U.S.C. § 216(b).

In the aggregate, Class Counsel have $32,375.62 in costs.  *See* Frankel Aff., at ¶¶ 14-16.  Class Counsel, as detailed in the Affidavit, incurred costs for filing fees, travel, computer research, photocopies, postage, and telephone charges and notice costs to the collective, and post-mediation services.  All of these costs were reasonably and necessarily incurred and are of the sort that would typically be billed to paying clients in the marketplace.  *See, e.g., Mendoza,* 2017 WL 342059, at *14 (awarding as reasonable, expenses resulting from "expert consultants, litigation support and professional services,

---

motion for approval).  And, Class Counsel will continue to incur fees in connection with administering the Settlement if it is approved by this Court.  Such additional work is routinely considered and approved by Courts in requested fee awards. *See Walker v. U.S. Dept. of Housing & Urban Devel.*, 99 F.3d 761, 769 (5th Cir. 1996) (upholding fee award that included time spent monitoring the defendant's compliance with court decrees).  Class Counsel is not seeking to be compensated for this additional work, but simply raises it as another factor supporting the reasonableness of the agreed upon attorneys' fees and cost award.

and travel"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees").

Further, the Parties have agreed to engage a third-party administrator, Simpluris Inc., a widely recognized reputable third-party claims administrator with extensive experience in the area of employment claims.[12]  Simpluris will be responsible for, *inter alia*, mailing the Notice Packets and the settlement checks; researching and updating addresses through skip-traces and similar means; reporting on the status of the administration of the Settlement to the Parties; setting up, administering and making payments from the deposited Settlement monies; and distributing settlement payments and withholding any required Employment Payroll Taxes and remitting such funds to the appropriate taxing authorities, along with any associated tax reporting, return and filing requirements.  *See* Settlement Agreement, at ¶ 32; Frankel Aff., at ¶ 16.  As part of the Settlement, Class Counsel has agreed to pay for Simpluris Inc.'s costs and services (estimated to be approximately $5,000).  Frankel Aff., at ¶ 16.  This amount will also be paid from the $617,471, further reducing the total amount Class Counsel be paid for attorneys' fees.  *See* Settlement Agreement, at ¶ 23.

In summary, Class Counsel's actual lodestar and costs total approximately $800,713.12.  However, Class Counsel has agreed for purposes of Settlement to accept $617,471 to settle their claim for reasonable attorneys' fees and costs, resulting in an award of approximately $580,096 for the legal services and $37,375 for costs.  Frankel Aff., at ¶ 17.  This result is fair and reasonable for the services provided and should be approved.

## VII.   PLAINTIFF'S SERVICE AWARD IS REASONABLE

Service awards "are fairly typical in class action cases."  *Rodriguez v. West*

---

[12] *See, e.g.,* http://simpluris.com/settlement-administrator-employment-cases.

*Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The Ninth Circuit has recognized that incentive, or service, awards serve an important function as they "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff Shoults has taken both an active role in and controlled the litigation for almost three years and has protected Plaintiffs' interests throughout that entire time. *See* Frankel Affidavit at ¶ 19. Plaintiff Shoults has been in regular communication with Class Counsel to obtain updates and status reports regarding this action, actively participated in discovery, participated in an all-day mediation session that led to the resolution of this case, and has reviewed the critical documents in this case, including settlement documents. *Id*. at ¶¶ 19-21. Thus, a service award in the amount of $5,000 is well within the range of what courts have approved as reasonable. *See, e.g., In re Mego Fin. Crop. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 service awards); *Alvarez v. Direct Energy Business Marketing LLC*, 2020 WL 1032800, at *3 (D. Ariz. March 3, 2020) (approving $15,000 service award to named plaintiff, in addition to service awards to some opt-in plaintiffs for a total of $38,500); *Koon v. OneAZ Credit Union*, 2017 WL 11662724, at *3 (D. Ariz. Oct. 18, 2017) (approving plaintiff service awards of $5,000); *Selk,* 159 F.Supp.3d at 1178 (approving $5,000 incentive award in FLSA case); *Evans v. Linden Research, Inc.,* 2014 WL 1724891, at *7 (N.D. Cal. Apr. 29, 2014) (noting that an award of $5,000 to a plaintiff is "presumptively reasonable"); *see also Mejia v. Bimbo Bakeries USA, Inc.,* No. 4:16-cv-00654-JAS (D. Ariz.) (approving plaintiff service award of $5,000) (D.E. 152 at 24 and D.E. 154); *Hanna v. ComTrans, Inc.*, No. 16-cv-01282 DLR (D. Ariz.)

(same) (D.E. 146 at 23-24 and D.E. 149).

## VIII.  CONCLUSION

The proposed Settlement includes payments of $102,529 to the Named Plaintiff and 181 Opt-In Plaintiffs to settle their claims for unpaid overtime compensation and liquidated damages.   Defendant is also paying Plaintiffs' reasonable attorneys' fees and costs in bringing this action in the amount of $617,471 and a $5,000 service award to Plaintiff Shoults.   And, Defendant is paying Plaintiff Shoults $75,000 for his individual FLSA retaliation claim. Other indicia of fairness are also present, including the fact that the Parties thoroughly investigated the issues, the Settlement will conserve substantial time and expense by eliminating the need for a trial, and, by settling, Plaintiffs have avoided a further delay in receiving any possible recovery.   This Settlement is comprehensive in its scope, is fair and even-handed in its application and is of substantial monetary economic benefit to Plaintiffs.   The Parties therefore respectfully request that the Court approve the proposed Settlement as a fair, reasonable and adequate resolution of the case.

DATED: April 6, 2022          YEN PILCH ROBAINA & KRESIN PLC
By ___*/s/Ty D. Frankel*_____
Ty D. Frankel
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450

YEN PILCH ROBAINA & KRESIN PLC
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

*Counsel for Plaintiff*

MARTENSON HASBROUCK & SIMON LLP
By ___*/s/ Kelly Eisenlohr-Moul (w permission)*___
Kelly Eisenlohr-Moul (pro hac vice)
2537 Apple Valley Rd. NE
Atlanta, Georgia 30319
Telephone: (470) 733-6312

*Counsel for Defendant*